UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOEL DE LA TORRE MOLINA,

Plaintiff,

v.                                                                CAUSE NO. 3:25cv594 DRL-SJF

DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

Defendant.

OPINION AND ORDER

In October 2024, Joel De La Torre Molina (a noncitizen) filed immigration petitions with the United States Citizenship and Immigration Service (USCIS). In this *pro se* action, he alleges unreasonable and unlawful delay in processing his petitions. He sued the Director of the USCIS under the Administrative Procedure Act (APA) alleging unreasonable delay of a bona fide determination, or in the alternative unlawful withholding of a waiting list decision while his petition pends, or in yet another alternative unreasonable delay of a waiting list determination. The government moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). The court grants the motion in part.

BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the complaint as true in deciding this motion. Joel De La Torre Molina is a Mexican citizen who has lived in the United States for approximately 31 years [1 ¶ 8]. On September 12, 2023, he was the victim of domestic abuse in South Bend, Indiana [*id.* ¶ 9]. Subsequently, on October 17, 2024, Mr. De La Torre Molina filed two immigration forms with USCIS: an I-918 Petition for U Nonimmigrant Status and a Form I-765 application for accompanying work authorization [*id.* ¶ 10-11]. He says

he doesn't have any disqualifying criminal history [*id.* ¶ 14] and his petitions have been pending with no action taken since October 17, 2024 [*id.* ¶ 15]. He says the delay has left him without a bona fide determination, work authorization, or deferred action, and is harmful [*id.* ¶ 16-17].

The government moved to dismiss for lack of jurisdiction and for failure to state a claim. In the spirit of *Lewis v. Faulkner*, 689 F.2d 100, 102-03 (7th Cir. 1982), the court advised Mr. De La Torre Molina of the motion and his responsibilities. Mr. De La Torre Molina didn't respond to the motion to dismiss, even after additional time has passed, so the court rules summarily today. *See* N.D. Ind. L.R. 7-1(d)(5).

## STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). The government seems to argue this motion as a facial attack.

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

## DISCUSSION

Congress authorized the United States Department of Homeland Security (DHS) to grant U-visas to noncitizen victims of serious crimes who cooperate with law enforcement. *See* 8 U.S.C. §§ 1103(a)(1), 1101(a)(15)(U); 8 C.F.R. § 214.14(a)(12). Such status offers temporary lawful status and related protections, including work authorization. 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 214.14(c)(7). Management of this process has been delegated to USCIS, an agency within DHS. 6 U.S.C. § 112(b)(1); 8 C.F.R. § 214.14(c)(1). By step, a noncitizen petitions for a U-visa by filing an I-918 form. 8 C.F.R. § 214.14(c)(1)(i). Once a petitioner's U-visa is approved, DHS provides the individual with an employment authorization document, sometimes called an EAD. 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 214.14(c)(7).

Congress capped the number of U-visas that may may be issued to principal foreign nationals (as opposed to spouses, children, or noncitizen parents of an applicant) at 10,000 each year. 8 U.S.C. § 1184(p)(2). USCIS routinely receives more petitions than the statutory cap permits, so by regulation USCIS places certain petitioners on a waiting list: "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list," with priority by filing date (oldest first). 8 C.F.R. § 214.14(d)(2); *see Lobatos v. Noem*, 2025

U.S. Dist. LEXIS 110757, 2-3 (N.D. Ill. June 11, 2025) (Kendall, C.J.) (describing USCIS's policy for processing U-visa petitions). In fiscal year 2024 alone, USCIS received 41,556 principal petitions. *See* USCIS, *Fiscal Year 2024: Immigration Applications and Petitions Made by Victims of Abuse Number of Form I-918 Petitions for U Nonimmigrant Status* (last visited Feb. 27, 2026).

Separately, Congress authorized DHS to grant interim employment authorization to certain U-visa applicants whose petitions remain pending. *See* 8 U.S.C. § 1184(p)(6). Under the "bona fide determination" process, sometimes called a BFD, USCIS first evaluates whether a pending Form I-918 petition is "bona fide," and then, "in its discretion," determines whether the petitioner presents a national security or public safety risk and otherwise merits a favorable exercise of discretion. *See* USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5. According to USCIS, the goal of this process is to "conduct[] reviews of U nonimmigrant status petitions more efficiently and provid[e] eligible victims of qualifying crimes with employment authorization and deferred action while they await a final adjudication of their petition for U nonimmigrant status under the annual statutory cap," as well as "provide victims with stability and better equip them to cooperate with and assist law enforcement." USCIS, *National Engagement—U Visa and Bona Fide Determination Process—Frequently Asked Questions* (last visited Feb. 27, 2026).

A bona fide determination does not confer U-visa status; it is an interim determination that, if favorable, may result in deferred action and work authorization while the petition remains pending. *See* USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5; *Kothari v. Dir. of U.S. Citizenship & Immigr. Servs.*, 2025 U.S. Dist. LEXIS 43171, 8-9 (N.D. Ill. Jan. 24, 2025) (Pallmeyer, J.) ("there is one line, but the petitioners in that line may carry either the waiting list designation or the BFD designation" while awaiting final adjudication). Though the BFD process does not include a full

analysis of U-visa eligibility requirements, USCIS conducts a full adjudication to determine eligibility as part of the waiting list process. USCIS Policy Manual, Vol. 3, Pt. C, Ch. 6.

The government moves to dismiss, arguing that (1) the court lacks subject matter jurisdiction over Mr. De La Torre Molina's BFD claim under a jurisdiction stripping provision, (2) his waiting list determination claim isn't ripe, and (3) the complaint insufficiently alleges unreasonable delay of a waiting list determination.

The court begins with the claim alleging unreasonable delay for a BFD. The APA authorizes suit by any person suffering a legal wrong because of an agency's action or failure to act, including the agency's failure to act within a reasonable time. 5 U.S.C. §§ 551(13), 555(b), 702, 706(1); *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 61-62 (2004); *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). "Failures to act are sometimes remediable under the APA, but not always." *SUWA*, 542 U.S. at 61. The APA allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *SUWA*, 542 U.S. at 62; *Mashpee Wampanoag*, 336 F.3d at 1099.

But, critically, the APA doesn't permit suit when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024). And the Immigration and Nationality Act provides "no court shall have jurisdiction to review…any [ ] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion[,] other than the granting of relief under section 1158(a) [governing asylum applications]." 8 U.S.C. § 1252(a)(2)(B)(ii). This bar on jurisdiction also extends to "'any…action' leading to [that] decision[] as well," including timing. *Daisy Garcia v. U.S. Citizenship & Immigr. Servs.*, 760 F. Supp. 3d 671, 673 (N.D. Ill. Dec. 23, 2024) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).

5

The statute implicated by alleging unreasonable delay in making a BFD falls within this jurisdiction-stripping provision because it provides that the DHS Secretary "*may grant* work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title."[1] 8 U.S.C. § 1184(p)(6) (emphasis added); *see Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024); *Nayi v. Noem*, 799 F. Supp.3d 739, 745-47 (N.D. Ill. 2025); *see also Biden v. Texas*, 597 U.S. 785, 787 (2022) (noting the Supreme Court "has repeatedly observed that the word 'may' clearly connotes discretion") (cleaned up); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 371 (4th Cir. 2021) ("the term 'pending, bona fide application' does not transform the discretionary 'may' into a mandatory 'shall.'"). Accordingly, the court dismisses Mr. De La Torre's claim alleging unreasonable delay of a BFD without prejudice for lack of jurisdiction.

The government next says Mr. De La Torre Molina's claims regarding a waiting list determination aren't ripe because a USCIS decision regarding his eligibility for a BFD may moot any need for a waiting list determination. Ripeness gives effect to Article III's case-or-controversy requirement by "preventing the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (quotations and citation omitted). Ripeness is "peculiarly a question of timing" that evaluates "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted); *accord Trump v. New York*, 592 U.S.

---

[1] The government's motion argues that the same reasoning leaves the court without jurisdiction to review later steps in the U-visa process, including any decision on an employment authorization document (EAD). Whether that may be so, the court need not decide because Mr. Molina clarifies that he "seeks only a BFD, not the related EAD" [1 ¶ 25].

125, 131 (2020). When a claim "depend[s] on so many future events that a judicial opinion would be advice about remote contingencies," ripeness presents a jurisdictional issue. *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006).[2] The court isn't limited to the parties' jurisdictional arguments, for it has an independent obligation to ensure its subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Smith v. Am. Gen. Life & Accident Ins.*, 337 F.3d 888, 892 (7th Cir. 2003).

The regulation governing waiting list decisions states that "all eligible petitioners, who, due solely to the cap, are not granted U-1 nonimmigrant status *must be placed* on [the] waiting list and receive written notice of such a placement." 8 C.F.R. § 214.14(d)(2) (emphasis added). By its plain language, the regulation doesn't limit waiting list eligibility to only petitioners who have received an unfavorable BFD. In other words, the regulation does not condition waitlist placement on a denial of BFD or employment authorization, as the government suggests, but anyone eligible who has not been granted U-1 nonimmigrant status. Whether USCIS may, as a practical matter, reach waiting list adjudication only after determining a petitioner won't receive BFD status isn't to say such sequencing is a hard and fast rule that removes such claims from this court's jurisdiction. *See Ronakkumar Patel v. Noem*, 788 F. Supp.3d 950, 956 (N.D. Ill. 2025) (Bucklo, J.) ("While true that a favorable BFD could obviate the need for a waitlist determination, a grant or denial of a BFD is not a prerequisite for a waitlist determination."); *Jaimin Jitendrakumar Patel v. Noem*, 2025 U.S. Dist. LEXIS 183377, 7-8 (N.D. Ill. Sept. 17, 2025) (Durkin, J.) (same).

Further, unlike a BFD, whether adjudication of a U-visa petition has been unreasonably delayed isn't discretionary. The regulation defines what it means to be "eligible" for a U-visa and

---

[2] Even still, this is separate from the discretion the court retains to decline jurisdiction or stay a case in certain circumstances under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a); *see, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart v. Excess Ins. of Am.*, 316 U.S. 491, 494 (1942); *Envision Healthcare, Inc. v. PreferredOne Ins.*, 604 F.3d 983, 986 (7th Cir. 2010); *Ray v. Bedi Tr.*, 611 F. Supp.3d 567, 577-78 (N.D. Ind. 2020).

lists the required elements. *See* 8 C.F.R. § 214.14(b) ("An alien is eligible for U-1 nonimmigrant status if he or she demonstrates all of the following…"). The regulation also requires USCIS to issue a written decision either approving or denying the petition. *See* 8 C.F.R. § 214.14(c)(5) ("After completing its de novo review of the petition and evidence, USCIS *will* issue a written decision approving or denying Form I-918 and notify the petitioner of this decision.") (emphasis added). And the regulation uses mandatory language for approvable petitions. *See* 8 C.F.R. § 214.14(c)(5)(i) ("If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS *will* approve Form I-918.") (emphasis added).

Section 1252(a)(2)(B)(ii) explicitly precludes judicial review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). That statute strips federal courts of jurisdiction only over decisions or actions "codified at 8 U.S.C. §§ 1151-1381 and titled 'immigration.'" *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010). Here, unlike the statutory language for a BFD, "making the threshold determination of whether an applicant is eligible for the waiting list is not" specified by law "to be in the discretion of the Attorney General or the Secretary of Homeland Security," and thus is reviewable by the court. *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp.3d 86, 102 (D.D.C. 2020); *see Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (noting that "both parties agree that USCIS has a duty to process the petitioner's application" in discussing unreasonable delay claim and there is "no dispute" a petitioner has a right to adjudication for the waiting list); *Gonzalez*, 985 F.3d at 361 (unreasonable delay in adjudicating U-visa petitions was reviewable); *Hernandez v. Jaddou*, 792 F. Supp.3d 739, 744 (S.D. Tex. 2025) ("USCIS' determination of Plaintiffs' eligibility for placement on the U-Visa

Waitlist…is mandatory and thus reviewable."); *Lara Santiago v. Mayorkas*, 55 F. Supp.3d 1340, 1348 (N.D. Ga. 2021) ("USCIS is required to determine whether a petitioner is eligible for a U visa, even if the ultimate decision to issue such a visa is discretionary."); *M.J.L. v. McAleenan*, 420 F. Supp.3d 588, 597 (W.D. Tex. 2019) (in the context of a U-visa petition, "a discretionary decision to grant or deny an application is distinct and separate from the nondiscretionary duty to adjudicate those applications"). The court thus has jurisdiction to decide whether Mr. De La Torre Molina has alleged a plausible claim for unreasonable delay in his waitlist placement.

The government argues that Mr. De La Torre Molina hasn't plausibly alleged this unreasonable delay. *See* Fed. R. Civ. P. 12(b)(6). Though not formally adopted in this circuit, many courts consider six factors from *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984), as useful guidance in evaluating unreasonable delay for immigration decisions under the APA, though these factors are not intended to be exclusive, *see, e.g.*, *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816-820 (D.C. Cir. 2024); *Gonzalez*, 985 F.3d at 375; *Barrios Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 451-52 (6th Cir. 2022); *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014); *Ebrahimi v. United States*, 732 F Supp.3d 894, 911-14 (N.D. Ill. 2024); *see also Menominee Indian Tribe of Wisc. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) (*TRAC* provides a "general framework for deciding claims of agency delay").

These factors include (1) whether the agency followed a rule of reason governing the time it takes to make a decision, (2) whether Congress provided a timetable it expects the agency to follow in the enabling statute that might inform this rule of reason, (3) whether human health and welfare are at stake such that a delay would be less tolerable than what might be reasonable in the sphere of economic regulation, (4) what effect expediting delayed action would have on

agency activities of a higher or competing priority, (5) the nature and extent of the interests prejudiced by the delay, and (6) whether any impropriety lurks behind the agency's lassitude, though such a finding isn't necessary to hold that agency action has been unreasonably delayed. *See TRAC*, 750 F.2d at 80. "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus [or injunctive relief]." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotations and citation omitted).

Both the complaint and the government employ the *TRAC* framework, and the court follows suit, doing so with a healthy reminder that Mr. De La Torre Molina need only allege a plausible claim, not a probable one or even now prove one. *See Iqbal*, 556 U.S. at 678. Courts commonly use the *TRAC* framework at the pleading stage to assist with assessing a pleading's plausibility, *see Ebrahimi*, 732 F. Supp.3d at 910 (citing cases), though a claim of unreasonable delay is "necessarily fact dependent" and often "sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375; *accord Barrios Garcia*, 25 F.4th at 451 (repeating same); *Mashpee Wampanoag*, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

The first two factors concern "the extent of and reasons for the agency delay." *Afghan & Iraqi Allies*, 103 F.4th at 816. They often walk hand-in-hand because together they assess whether the government has a "sufficient rhyme and reason" that explains its response time. *Ebrahimi*, 732 F. Supp.3d at 910 (quotations and citations omitted). The first—one of the "most important" factors, *In re Core Commc'ns*, 531 F.3d at 855—more particularly concerns whether the time the agency takes to make its decisions is governed by a rule of reason, *TRAC*, 750 F.2d at 80. The court must assess "whether the agency's response time…is governed by an identifiable rationale,"

*Palakuru v. Renaud*, 521 F. Supp.3d 46, 50-51 (D.D.C. 2021) (quotations and citation omitted), or whether this pleading plausibly suggests the opposite.

The government contends USCIS uses a "first in, first out" approach—adjudicating U-visa petitions in the order received, with limited expedition under agency criteria. *See* 8 C.F.R. 214.14(d)(2). But *Gonzalez*, 985 F.3d at 375-76, explains why that assertion doesn't always warrant dismissal at the pleading stage. The Fourth Circuit reversed a dismissal, acknowledging that a "first in, first out approach with enumerated exceptions may be a rule of reason," but dismissal was premature because the court didn't "know enough about how the agency implements its rules and exceptions," and at that stage that court could "only review [the] pleadings." *Id.* at 375; s*ee Barrios Garcia*, 25 F.4th at 453 ("the machinery of the U-visa and prewaitlist-work-authorization adjudication processes is known only to USCIS").

Such is the case here. Mr. De La Torre Molina alleges USCIS doesn't actually follow any ordering principle in the waitlist determination process. He plausibly pleads that later-filed applications receive a determination before earlier-filed applications and that USCIS prioritizes certain decisions ahead of others because of removal processes or United States Immigration and Customs Enforcement requests [1 ¶ 96-97]. The government's invocation of a certain procedure doesn't defeat factor one at the pleading stage because no record exists of how those rules and exceptions operate in practice, particularly for the initial placement on a waitlist. *Barrios Garcia*, 25 F.4th at 453 (plaintiffs adequately alleged "no rule of reason governs the U-visa adjudication process" where they alleged "many U-visa applications were filed after but decided before theirs," which showed "USCIS does not make U-status waiting list decisions on a first in, first out basis."); *Ruchi Rajnikant Patel v. Sanders*, 2025 U.S. Dist. LEXIS 66804, 20-21 (N.D. Ill. Apr. 7, 2025) (Ellis, J.) (factor one weighed in plaintiff's favor when complaint sufficiently alleged USCIS

didn't review visa applications in the order received despite a stated first in first out rule). Accordingly, the first factor weighs in Mr. De La Torre Molina's favor.

The second factor considers whether Congress has established a timetable for the agency's action to "supply content" to the rule of reason. *TRAC*, 750 F.2d at 80. In one sentence, the government argues Congress hasn't articulated a timeframe within which it expects U-visa petitions to be processed, thus factor two cuts in its favor. But Congress has explicitly provided its "sense" that "the processing of an immigration benefit should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). This case concerns waitlist placement, and such placement comes with benefits, as USCIS "will grant eligible petitioners and qualifying family members on the waiting list deferred action and work authorization while they wait for final adjudication. However, those who are waiting to be placed on the waiting list are not granted this benefit." *Calderon-Ramirez*, 877 F.3d at 274 (citation omitted).

Even still, Congress's guidance is "aspirational, rather than mandatory." *Shen v. Pompeo*, 2021 U.S. Dist. LEXIS 67950, 20 (D.D.C. Mar. 24, 2021). And time alone typically won't support a claim of unreasonable delay. *Immigr. & Naturalization Serv. v. Miranda*, 459 U.S. 14, 18 (1982). Mr. De La Torre Molina pleads he submitted his petition on October 17, 2024 and has not been placed on the waitlist since [1¶ 10, 15]. By the court's count, about sixteen months have now elapsed, which tends to cut against a claim of unreasonable delay.[3] "The court is not aware of any decision by any court concluding that an adjudication taking fewer than two years amounts to an unreasonable delay." *Ebrahimi v. Blinken*, 732 F. Supp.3d 894, 911 (N.D. Ill.) (collecting cases); *see*

---

[3] According to USCIS's website, 80 percent of U-visa petitions are issued either a BFD or notice of consideration for waiting list placement within 18.5 months. Case Processing Times, *U.S. Citizenship and Immigration Services*, https://egov.uscis.gov/processing-times/ (last visited Feb. 27, 2026).

*also Zadeh v. Blinken*, 2024 U.S. Dist. LEXIS 90064, 25 (N.D. Ill. May 20, 2024) (Seeger, J.) ("a review of the case law suggests that a delay of a little over a year is insufficient, by a wide margin."). Sixteen months exceeds Congress's suggested timeline but isn't the sort of extraordinary delay that courts typically deem unreasonable. On balance, the first two factors stand in equipoise.

Courts often evaluate the third and fifth factors together, *see, e.g.*, *Afghan & Iraqi Allies*, 103 F.4th at 817-18; *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344-45 (D.C. Cir. 2023); *Barrios Garcia*, 25 F.4th at 452, and it is convenient to do so here. The third factor considers "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth factor is similar but broader, accounting for "the nature and extent of the interests prejudiced by delay." *Id.*; *see Da Costa*, 80 F.4th at 344.

These factors weigh in an applicant's favor when his wellbeing is imperiled by the delay. Examples include Afghan and Iraqi special-immigrant visa applicants who helped the United States "at great personal risk" during armed conflict and faced "a substantial risk of retribution," *Afghan & Iraqi Allies*, 103 F.4th at 811, 812, or non-citizen victims of serious crimes who cooperated with law enforcement and, because their immigration applications were in limbo, couldn't obtain identification cards, healthcare, insurance, or lawful employment, risked removal from the United States, and couldn't reunite with family abroad because they couldn't lawfully travel to and from the United States, *Barrios Garcia*, 25 F.4th at 437, 452. In contrast, generalized welfare risks, moderate financial harms, and the personal and familial strain sourced in uncertainty are often insufficient. *See Da Costa*, 80 F.4th at 344-45.

Mr. De La Torre Molina alleges that without a waiting list determination, he can't acquire deferred action, work authorization, a social security number, and in turn can't receive any

associated benefits, like lawful employment and a bank account [1 ¶ 106-110]. He also notes he is left subject to removal [*id.* ¶ 111]. The government argues Mr. De La Torre Molina's situation isn't unique; any similarly situated petitioner suffers the same harms. *See Mohammad v. Blinken*, 548 F. Supp.3d 159, 168-69 (D.D.C. 2021) ("The Court is not unsympathetic to the plaintiff's difficulties. But the court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications.") (cleaned up); *Palakuru v. Renaud*, 521 F. Supp.3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that [the plaintiff] has an interest in prompt adjudication, so too do the many others facing similar circumstances…At most, these factors would weigh only slightly in support of finding an unreasonable delay.").

The court agrees that Mr. De La Torre Molina's listed hardships "are not unlike those of many if not all visa applicants." *Jama v. Wahid*, 2025 U.S. Dist. LEXIS 16568, 25 (E.D. Wis. Jan. 30, 2025) (Duffin, M.J.). At the same time, the harms alleged, including lack of lawful work authorization and other inabilities to obtain ordinary indicia of stability, are concrete and ongoing, even if not unique to him. *See Barrios Garcia*, 25 F.4th at 452 (finding factors three and five weighed in plaintiffs' favors where similar harms alleged); *Zadeh*, 2024 U.S. Dist. LEXIS 90064 at 27 (these "factors tilt only slightly in [plaintiffs'] favor" because "[o]ther applicants are dealing with like circumstances"). The court concludes these two factors weigh just slightly in support of finding an unreasonable delay.

The fourth factor concerns the impact of expediting Mr. De La Torre's application on competing priorities at USCIS. *TRAC*, 750 F.2d at 80. The government says Mr. De La Torre Molina wishes only to skip the line and "jump ahead" of other applicants. Mr. De La Torre alleges USCIS can't show that reviewing his application would harm its ability to review other applications because it doesn't make waiting list determinations in a first-in, first-out basis and

14

that USCIS has sufficient resources to make waiting list decisions in a reasonable period of time [1 ¶ 113, 115, 117, 119].

The court of appeals has held that an applicant doesn't have a "right to skip ahead of other petitioners who filed an application before [him], but who are also waiting for an adjudication." *Calderon-Ramirez*, 877 F.3d at 275. Mr. De La Torre Molina offers no reason why he should be entitled to leapfrog over others in his position, yet he argues USCIS doesn't process applications in manner such that there is a "line" to cut [*id.* ¶ 117]. On the pleadings, both positions depend on how USCIS actually processes and prioritizes matters and what resources and priorities are implicated—and "at the motion to dismiss stage the court lacks sufficient evidence to assess the agency's adjudication process and its effect on other applicants." *Jama*, 2025 U.S. Dist. LEXIS 16568 at 28 (collecting cases). This factor is neutral.

The sixth factor concerns whether delay is the product of impropriety, though an affirmative finding isn't needed to identify unreasonable delay. *Da Costa*, 80 F.4th at 345-46 (citing *TRAC*, 750 F.2d at 80). Mr. De La Torre Molina alleges USCIS has stopped making waiting list decisions for three years, militating in favor of impropriety [1 ¶ 123], an argument the government doesn't counter. On this record, taking the allegation as true, factor six weighs in Mr. De La Torre Molina's favor.

Considering all factors together, and mindful of Mr. De La Torre Molina's light burden at this stage, *see Iqbal*, 556 U.S. at 678, he has plausibly alleged enough to proceed on his APA claim of unreasonable delay of a waiting list decision. Affording him all reasonable inferences as the court must today, at this early stage of the case, the first, third, fifth, and sixth factors weigh in his favor at least to some degree, whereas the second cuts against him and the fourth is neutral. Only the facts on a more developed record will determine whether this analysis changes.

Mr. De La Torre Molina also tries to articulate a difference between an unlawful withholding of a waiting list determination and an unreasonably delayed one. The distinction turns on whether Congress has imposed a date-certain deadline for the agency action at issue. *South Carolina v. United States*, 907 F.3d 742, 760 (4th Cir. 2018) ("an agency's failure to meet a hard statutory deadline" is withholding); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998) ("if an agency has no concrete deadline establishing a date by which it must act…a court must compel only action that is delayed unreasonably," but "when [an agency] fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action."); *Sierra Club v. Thomas*, 828 F.2d 783, 793-95 (D.C. Cir. 1987) (agency action is withheld when "agency inaction violates a clear duty to take a particular action by a date certain"); *Topuz v. Daum*, 2024 U.S. Dist. LEXIS 172647, 11 (S.D. Tex. Sept. 24, 2024) (quoting *Forest Guardians*, 174 F.3d at 1190) ("there are only grounds for an 'unlawfully withheld' claim where there is a 'statutorily imposed absolute deadline.'"). Here, Mr. De La Torre Molina doesn't identify a statutory deadline for a waiting list determination, nor does the regulation impose one. *See* 8 C.F.R. § 214.14(d). Accordingly, the court construes his waiting list determination claim as alleging unreasonable delay because the other is not a claim on which relief could be granted.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the government's motion to dismiss under Rule 12(b)(1) and 12(b)(6), permitting him to proceed only on his claim of unreasonable delay in a waitlist placement [6].

SO ORDERED.

March 10, 2026                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court